

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 18, 1939

Honorable R. T. Brown,
Chairman of Committee on Education,
House of Representatives,
Austin, Texas

Dear Sir:

Opinion No. O-455
Re: Validity of Art. II of H. B.
340, concerning a graduated
tax on the production of oil

Your letter of May 16, 1939, asking our opinion on Article II of House Bill 340 of the present Legislature, was duly received. Your letter says:

"Article II of the Committee substitute for such bill proposes a graduated tax on oil, and I am attaching hereto a copy of such proposal.

"On behalf of the Committee on Education, I would appreciate your advising me of your opinion as to the validity of such proposal under both the State and Federal constitutions."

We do not have the title or caption of House Bill 340 before us, and therefore we will not pass on that feature of it; but we will pass on the constitutionality of it as far as the provisions in the body of Article II of the bill are concerned.

The present law now in effect, which this proposes to amend, provides, in part, in Article 7057a of the Revised Civil Statutes, as follows:

"There is hereby levied an occupation tax on oil produced within this State of two and three-quarters cents (2 3/4¢) per barrel of forty-two (42) standard gallons. * * * Provided, however,

that the occupation tax herein levied on oil
shall be two and three-quarters per cent
(2 3/4%) of the market value of said oil
whenever the market value thereof is in ex-
cess of One Dollar ($1) per barrel of forty-
two (42) standard gallons, * * *"

The present law was held to be constitutional by the
Court of Civil Appeals (at Austin) in the case of Trustees of
Cook's Estate v. Sheppard, 89 S. W. (2d) 1026 (writ of error
denied), and by the Supreme Court of the United States in the
case of Barwise v. Sheppard, 299 U. S. 33, 57 S. Ct. 70, 81
L. Ed. 23.

The only material changes that Article II of House
Bill 340, which you ask about, makes in the present law are
the changes that are created by virtue of the provisions of
Section 2 of this new bill, which read as follows:

"(1). There is hereby levied an occupa-
tion tax on oil produced within this State
from any well producing daily more than 20
barrels, averaged over the preceding 90 con-
secutive days, of four cents (4¢) per barrel
of forty-two (42) standard gallons. Provided,
however, that the occupation tax herein levied
on such oil shall be four per cent (4%) of the
market value of said oil whenever the market
value is in excess of One Dollar ($1.00) per
barrel of forty-two (42) standard gallons.

"(2). Provided, however, there is levied
an occupation tax on oil produced within this
State from any well producing daily more than
10 barrels and not more than 20 barrels, aver-
aged over the preceding 90 consecutive days,
of three and one-half cents (3 1/2¢) per bar-
rel of forty-two (42) standard gallons. Pro-
vided, however, that the occupation tax here-
in levied on such oil shall be 3 1/2% of the
market value of said oil whenever the market
value thereof is in excess of One Dollar
($1.00) per barrel of forty-two (42) standard
gallons.

"(3). Provided, however, there is levied
an occupation tax on oil produced within this
State from any well producing more than five (5)

barrels and not more than ten (10) barrels
averaged over the preceding thirty (30) con-
secutive days of three cents (3¢) per barrel
of forty-two standard gallons. Provided, how-
ever, that the occupation tax herein levied on
such oil shall be three per cent (3%) of the
market value of said oil whenever the market
value thereof is in excess of One Dollar
($1.00) per barrel of forty-two (42) standard
gallons.

"(4). Provided, however, there is levied
an occupation tax on oil produced within this
State from any well producing not more than
five (5) barrels, averaged over the preceding
30 consecutive days, of two and three-fourths
cents (2 3/4¢) per barrel of forty-two (42)
standard gallons. Provided, however, that
the occupation tax herein levied on such oil
shall be two and three-fourths per cent
(2 3/4%) of the market value of said oil when-
ever the market value thereof is in excess of
One Dollar ($1.00) per barrel of forty-two (42)
standard gallons."

There are some other provisions in the Article under
consideration, but we do not believe they could possibly af-
fect any question of constitutionality.

We can summarize the situation as follows:  The pre-
sent law levies an occupation tax of 2 3/4¢ per barrel (or
2 3/4% of the market value when the market value is in excess
of $1.00 per barrel) on the production of oil produced from
any and all oil wells in this State; but the new bill that
you ask about would levy an occupation tax on the production
of oil on the basis of a graduated tax at so much per barrel
that would vary according to the size of the well, based on
production of the well, as follows:  4¢ per barrel from wells
producing more than 20 barrels daily, 3 1/2¢ per barrel from
wells producing between 10 and 20 barrels daily, 3¢ per bar-
rel from wells producing between 5 and 10 barrels daily, and
2 3/4¢ per barrel from wells producing less than 5 barrels
daily.

The only possible constitutional question that we can
see in this case is whether or not the charging of this tax in
different amounts per barrel, depending on the size of the
well, is based upon a reasonable classification.  If it is not

a reasonable classification it would be in violation of
Sections 1 and 2, Article VIII, Constitution of Texas, and
the 14th Amendment of the Constitution of the United States.
Sec. 1, Art. VIII, Constitution of Texas, says:

"Taxation shall be equal and uniform."

Sec. 2, Art. VIII, Constitution of Texas, says:

"All occupation taxes shall be equal
and uniform upon the same class of sub-
jects within the limits of the authority
levying the tax. * * *"

The 14th Amendment of the Constitution of the United
States, in part, says:

"No State shall make or enforce any
law which shall abridge the privileges or
immunities of citizens of the United States;
nor shall any State deprive any person of
life, liberty, or property, without due
process of law; nor deny to any person
within its jurisdiction the equal protect-
ion of the laws."

We believe that the courts of this State would hold
that this new act sets up a reasonable classification, and
that it is clearly valid and constitutional; and we are led
to this conclusion by virtue of the opinion of the Supreme
Court of Texas in the case of Hurt v. Cooper, 130 Tex. 433,
110 S. W. (2d) 896, in which the Texas Chain Store Tax Law
was upheld. That law provided that the owner of a store or
stores should pay a license fee, which was a graduated license
based on the number of stores he owned, it being $1.00 per store,
if he owned only one store, $6.00 per store if he owned two or
three stores, $25.00 per store if he owned three, four or five
stores, and the amount per store being increased in said man-
ner until seven different amounts (there being seven brackets
or groups) were designated, the seventh and highest being
$750.00 per store if he owned more than 50 stores. In holding
the Texas Chain Store Tax Law valid, the court said:

"* * * we experience no difficulty in
reaching the conclusion that the so-called
license fees levied thereby are primarily
occupation taxes. * * *

"The opinion of this court speaking

through Justice Williams in Texas Co. v.
Stephens, 100 Tex. 628, 103 S. W. 481, 485,
is the leading case in this jurisdiction on
the subject of occupation taxes. Many
phases of the subject were presented in
that case and the opinion leaves little, if
anything, to be said on the questions dis-
cussed. As bearing upon the particular
question now being considered, this language
from that opinion is appropriate: 'The very
language of the Constitution of the state im-
plies power in the Legislature to classify
the subjects of occupation taxes and only re-
quires that the tax shall be equal and uni-
form upon the same class. Persons who, in
the most general sense, may be regarded as
pursuing the same occupation, as, for in-
stance, merchants, may thus be divided into
classes, and the classes may be taxed in
different amounts and according to different
standards. Merchants may be divided into
wholesalers and retailers, and, if there be
reasonable grounds, these may be further
divided according to the particular classes
of business in which they may engage. The
considerations upon which such classifica-
tions shall be based are primarily within
the discretion of the Legislature. The courts,
under the provisions relied on, can only inter-
fere when it is made clearly to appear that an
attempted classification has no reasonable
basis in the nature of the businesses classi-
fied, and that the law operates unequally upon
subjects between which there is no real differ-
ence to justify the separate treatment of them
undertaken by the Legislature. This is the
rule in applying both the state and federal
Constitutions, and it has been so often stated
as to render unnecessary further discussion of
it.'

"That is a definite holding that merchants
may be divided into classes and the classes tax-
ed in different amounts and according to differ-
ent standards; that the considerations upon which
such classifications are based are primarily with-
in the discretion of the Legislature; and that
courts can interfere only when it is made clearly
to appear that there is no reasonable basis for

the attempted classification. If there is a reasonable basis, or, to express it differently, if it cannot be said that the Legislature acted arbitrarily, the courts will not interfere. * * *"

In the recent case of New York Rapid Transit Corp. v. City of New York, 303 U. S. 573, 58 S. Ct. 721, it was contended that the New York City ordinance, known as a Local Law, levying a franchise excise tax on public utilities, was unconstitutional because it only applied to certain named businesses and not to other very similar businesses; but in an opinion by Mr. Justice Reed, the Supreme Court of the United States held that it did not make an unreasonable classification, and said:

"No question is or could be made by the corporation as to the right of a state, or a municipality with properly delegated powers, to enact laws or ordinances, based on reasonable classification of the objects of the legislation or of the persons whom it affects. 'Equal protection' does not prohibit this. Although the wide discretion as to classification retained by a Legislature often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. * * * Indeed, it has long been the law under the Fourteenth Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it.' * * *'The rule of equality permits many practical inequalities.' Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 296, 18 S. Ct. 594, 599, 42 L. Ed. 1037; Breedlove v. Suttles, 302 U.S. 277, 281, 58 S.Ct. 205, 82 L. Ed. 252; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 100 A.L.R. 1327. 'That satisfies this equality has not been and probably never can be, precisely defined.' Magoun v. Illinois Trust & Savings Bank, supra, 170 U.S. 283, 293, 18 S.Ct. 594, 598, 42 L. Ed. 1037.

"The power to make distinctions exists with full vigor in the field of taxation, where no 'iron rule' of equality has ever been enforced

upon the states. * * * A state may exercise a wide discretion in selecting the subjects of taxation (Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 294, 18 S.Ct.594, 42 L.Ed.1037; Quong Wing v. Kirkendall, 223 U.S.59, 62, 32 S.Ct.192, 56 L.Ed.350; Heisler v. Thomas Colliery Co., 260 U.S.245, 255, 43 S.Ct.83, 84, 67 L.Ed.237) 'particularly as respects occupation taxes.' Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 179, 43 S.Ct. 526, 529, 67 L. Ed.929; Brown-Forman Co. v. Kentucky, 217 U.S.563, 573, 30 S.Ct.578, 54 L.Ed.883; Southwestern Oil Co. v. Texas, 217 U.S. 114, 121, 126, 30 S.Ct.496, 54 L.Ed.688; see Ohio Oil Co. v. Conway, 281 U.S.146, 159, 50 S.Ct.310, 313, 74 L.Ed.775. * * *"

We feel that there is a valid justification in the Legislature levying a higher tax per barrel on the production of oil from large producing wells than on the production of oil from small producing wells. In most cases it costs less per barrel to produce the oil from the large "producers" than it does from the small "producers." Another difference is found in the actual operation of large "producers" and small "producers." In the case of large "producers" a greater per cent of the wells are "flowing wells" than in the case of the small "producers;" and consequently there is a difference in the operation of the wells. There are also many other differences, which we will not go into here.

It is our opinion that Section II of House Bill 340, which you ask about, is valid and constitutional.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Rotsch_

Cecil C. Rotsch
Assistant

CCR-MR

APPROVED:

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN